**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
|  | : |  |
| GLENDA MAE GEORGE, | : |  |
|  | : |  |
| Plaintiff, | : | Civil Action No. 13-5179 (FLW) |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| COMMISSIONER OF SOCIAL | : |  |
| SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

**WOLFSON**, **United States District Judge**:

Before the Court is the appeal of Glenda Mae George ("Plaintiff") from the decision of

Carolyn W. Colvin, the United States Commissioner of Social Security ("the Commissioner"),

denying Plaintiff's claim for disability benefits under the Social Security Act ("Act"). Plaintiff

claims that the Commissioner erred in denying Plaintiff's claim for disability benefits because (i)

Plaintiff did not knowingly waive her right to counsel at her hearing before Administrative Law

Judge Lissek ("ALJ"), (ii) the ALJ improperly evaluated the medical evidence, and (iii) the ALJ

misinterpreted the testimony of the Vocational Expert. After a thorough review of the

Administrative Record ("A.R."), this Court finds, for the reasons set forth below, that (1) the

ALJ should have been aware that Plaintiff, due to her low IQ and minimal level of education,

could not have knowingly and intelligently waived her right to counsel without additional

inquiry, and (2) the ALJ failed to meet his heightened to duty to Plaintiff by failing to obtain

relevant medical evidence and by inadequately cross-examining the Vocational Expert.

1

Accordingly, this case is remanded for further proceedings before the Administrative Law Judge consistent with this Opinion.

I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that she has been disabled since February 28, 2008, due to a cardiac condition, hypertension, depression, and a learning disability. A.R., 130-46. Plaintiff applied for Supplemental Security Income on April 5, 2010. A.R., 118-24. Her application was denied initially and upon reconsideration by the Social Security Administration. A.R., 63-4. A hearing before an Administrative Law Judge was held on April 3, 2012. A.R., 33-62. On April 26, 2012, the ALJ issued an opinion denying Plaintiff's claim for benefits, concluding that Plaintiff was not disabled as defined under the Act. A.R., 17-32. Plaintiff requested review by the Appeals Council, which was denied on July 10, 2013. A.R., 1-5. Plaintiff now seeks review by this Court of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

Plaintiff's first contention on appeal is that she was not properly advised of her right to counsel at her Social Security hearing before ALJ Lissek, and, thus, that she did not knowingly and intelligently waive her right at her hearing. Specifically, Plaintiff does not challenge that the ALJ asked her questions that would have placed a person of ordinary intelligence on notice of his or her right to counsel, but, instead, contends that Plaintiff's mental limitations, of which the ALJ was or should have been aware, are such that Plaintiff could not have knowingly and intelligently waived her right to counsel without additional inquiry from the ALJ over and above the standard colloquy.

2

In addition to arguing that the ALJ failed to observe his obligations to Plaintiff due to her mental limitations, Plaintiff also argues that the ALJ failed to act in accordance with the heightened duty that ALJs owe to all *pro se* plaintiffs. Plaintiff contends that the ALJ declined to inquire into a report by Dr. Fulford regarding Plaintiff's limited intelligence. The ALJ also allegedly neglected to properly cross-examine the Vocational Expert, a task the Plaintiff asserts she was unable to undertake due to her mental limitations and the absence of counsel. The Commissioner responds that ALJ Lissek conducted an adequate colloquy with Plaintiff at the April 26, 2012 hearing, during which Plaintiff properly waived her right to counsel by voluntarily and unambiguously agreeing to proceed without counsel in response to the ALJ's questioning. The Court now considers the adequacy of Plaintiff's waiver of the right to counsel and the potential for prejudice to Plaintiff's benefits claim.

## II. STANDARD OF REVIEW

Social Security claimants have a statutory and regulatory right to counsel at social security hearings. *Phifer ex rel. Phifer v. Commissioner of Social Sec.*, 84 Fed. App'x 189, 190 (3rd Cir. 2003); *See also Holland v. Heckler*, 764 F.2d 1560, 1562 (11th Cir. 1985); 42 U.S.C.A. § 406; 20 C.F.R. § 404.1700 *et seq*. Furthermore, "[a] claimant must be given notice of his or her right to counsel, but may waive that right so long as the waiver is knowing and intelligent." *Sesko v. Commissioner of Social Security*, No. 08-cv-0151, 2009 WL 2579304, at *9. *See also Phifer*, 84 Fed. App'x at 190; *Kulas v. Commissioner of Social Sec.*, No. 13-4790, 2014 WL 1744833, at *4-5 (D.N.J April 30, 2014); *Yakley v. Astrue*, No. 12-857, 2013 WL 1010671, at *3-4 (D.N.J. March 13, 2013).

Unlike other circuits, the Third Circuit has not delineated specific guidelines for what an ALJ must explain to a *pro se* plaintiff regarding the right to counsel. *Vivaritas v. Commissioner of Social Sec.*, 264 Fed. App'x 155, 157 n. 1 (3d Cir. 2008). While the Circuit Court has established no specific guidelines on this issue, it has, on at least one occasion, relied upon the Seventh Circuit's guidelines to establish a framework for what must be explained. *See Vivaritas*, 264 Fed. App'x at 157 n. 1. In *Vivaritas*, the Third Circuit applied the Seventh Circuit standard to require ALJs to explain "to *pro se* claimants '(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.'" *Id.* (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).

In addition to being required to properly inform claimants of their right to counsel, ALJs engaging in a waiver colloquy with a claimant must take into account the mental capacity of the claimant to understand the importance of counsel and the implications of waiving the right to counsel. *See Vivaritas*, 264 Fed. App'x at 158-60; *Curry v. Barnhart*, No. 05-CV-2350, 2006 WL 1192920, at *3 (E.D. Pa. Jan. 25, 2006). When an ALJ fails to take account of a claimant's mental limitations, district courts in this circuit invalidate claimants' waivers of the right to counsel. In *Curry v. Barnhart*, for example, the court found that the claimant's waiver "was neither knowing nor intelligent," but "[i]nstead, it was the result of an indigent and illiterate claimant of advanced age being put on the spot to make a critical decision in a foreign and bewildering forum." *Id.* (finding that a 61 year old man who was illiterate and had only completed elementary school did not knowingly and intelligently waive his right of counsel).

4

III. COMPLIANCE WITH THE HALLEX MANUAL

As a threshold matter, the Commissioner maintains that the colloquy between Plaintiff and the ALJ, in which the ALJ explained the benefits of counsel and how counsel may be obtained, met the standard for waiver of counsel as delineated in the Hearings, Appeals, and Litigation Law Manual (HALLEX). Therefore, the Commissioner argues, Plaintiff's waiver was necessarily adequate. Commissioner's Br., at 6-7. HALLEX states that "[o]nce the ALJ has determined that the claimant is capable of making an informed choice, he or she will either secure on the record the claimant's decision concerning representation, or obtain from the claimant a written waiver of the claimant's right to representation." HALLEX I-2-6-52(B). HALLEX, however, has no binding legal force upon this Court and is considered by the federal courts merely as a resource "for internal use by thousands of SSA employees." *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981).[1] Accordingly, while the Court observes that the ALJ's waiver facially complied with the minimum HALLEX standards, the Court does not find this compliance dispositive on the question of the adequacy of Plaintiff's waiver.

IV. ADEQUACY OF PLAINTIFF'S WAIVER

In *Vivaritas v. Commissioner of Social Security*, a recent unpublished Third Circuit opinion, the court dealt with a factually similar situation to the one at hand. The plaintiff in *Vivaritas* applied for Social Security Disability benefits because she suffered from migraines,

---

[1] Plaintiff properly notes the limited legal effect of HALLEX in her response letter dated April 21, 2014.

asthma, and depression, preventing her from obtaining work. *Vivaritas*, 264 Fed. App'x at 157.

At the Social Security hearing, both the plaintiff and her doctors gave testimony concerning the

plaintiff's low IQ and intellectual capabilities. *Id.* The ALJ determined that Vivaritas was not

eligible for disability benefits and the Appeals Council found that she was not eligible to appeal

the decision. *Id.* Vivaritas then appealed the ALJ's decision to the District Court, which affirmed

the ALJ's decision. *Id.* On appeal, the Third Circuit held that, despite the ALJ's proper colloquy

regarding the waiver of counsel, the claimant's testimony regarding her mental limitations

"should have given the ALJ concerns as to whether her explanation to the plaintiff of her right to

counsel was sufficient and whether the plaintiff's waiver of that right was knowing and

intelligent." *Id.* at 159. Thus, the court held that there was not a proper waiver of counsel, as the

plaintiff did not have the capacity to knowingly waive her right to counsel. *See Id.*

In the instant manner, ALJ Lissek's colloquy was substantially similar to that in

*Vivaritas* and addressed how counsel may assist the claimant, the availability of free counsel, and

the opportunity to adjourn the proceedings until counsel is so procured. A.R., 36; *Vivaritas*, 264

Fed. App'x at 158-159. While the colloquies differ slightly, the language regarding how counsel

may aid the claimant and what the ALJ must do to aid the *pro se* claimant are identical. *See* A.R.,

36; *Vivaritas*, 264 Fed. App'x at 158-159. However, while there may have been a proper

colloquy in this case, testimony was given at Plaintiff's hearing, as at the hearing in *Vivaritas*,

regarding the mental capacity of Plaintiff that should have called into question her ability to

knowingly and intelligently waive her right to counsel. Specifically, Plaintiff testified that she

was being tested for a learning disability, referencing a planned evaluation by Dr. Fulford. A.R.,

40-42. Additionally, while the report by Dr. Fulford, which stated that the Plaintiff was within

the "borderline range of intelligence," was not received until after Plaintiff's hearing, testimony

regarding the Plaintiff's low level of education and anxiety towards the proceedings should have

made clear the need for further inquiry into Plaintiff's intelligence and, potentially, for a

professional evaluation of Plaintiff. A.R., 393. Specifically, ALJ Lissek found that Plaintiff is

currently taking reading classes that "are stressful and anxiety producing." A.R., 25. In addition,

as explained *infra*, Plaintiff specifically alluded to her potential learning disability and clearly

stated that she was being tested for a learning disability. A.R., 42. As in *Vivaritas*, allusions to

Dr. Fulford's as yet incomplete report, the ALJ's findings, and other testimony provided at the

hearing demonstrate that Plaintiff's apparent, limited mental capacity should have called into

question her ability to waive her right to counsel. Thus, despite the ALJ's facially proper

colloquy on the right to counsel, Plaintiff's low IQ scores and limited intellectual functioning

prevented her from knowingly and intelligently waiving her right to counsel at the April 26, 2012

SSA hearing.


V. PREJUDICE TO PLAINTIFF


A Social Security Disability appeal cannot be remanded solely on the basis of the

insufficiency of plaintiff's waiver of his or her right to counsel. *Yakley v. Astrue*, (D.N.J. Mar.

13, 2013) (citing *Bentley v. Comm'r of Soc. Sec.*, No 10-2714, 2011 WL 4594290 at *9 (D.N.J.

Sept. 30, 2011)). "[T]he Court may remand a social security matter for further proceedings

[only] if it appears either that lack of counsel prejudiced the claimant or that the administrative

proceedings were marked by unfairness." *Id.*; *see also Livingston v. Califano*, 614 F.2d 342, 345

(3d Cir. 1980). Prejudice to *pro se* claimants can arise in circumstances outside of those found in

cases in which claimants are represented by counsel. When a *pro se* claimant waives his or her

right to counsel, the ALJ presiding over the claimant's hearing has a heightened duty to help develop the record that goes beyond the base "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 120 (2000). The ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (quoting *Key v. Heckler*, 754 F.2d 1545, 1551 9th Cir. 1985)). The *pro se* claimant may be prejudiced by the ALJ's failure to observe this heightened duty.  *Dobrowolsky*, 606 F.2d at 407. Thus, "if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal." *Livingston*, 614 F.3d at 345; *see also Kummer*, 2013 WL 5467067 at *3 ("The court may find a proceeding unfair where the ALJ does not develop a complete record and the essential inquiry is whether 'the incomplete record reveals evidentiary gaps which result in prejudice to the claimant.'" (quoting *Gauthnney v. Shalala*, 890 F. Supp 401, 410 (E.D. Pa. 1995))).

Plaintiff argues that remand is appropriate for two reasons: (1) ALJ Lissek failed to meet his heightened duty to Plaintiff by failing to obtain Dr. Fulford's report, and (2) the hearing was unfair because the Vocational Expert's testimony was incomprehensible to the Plaintiff and, thus, she was unable to cross-examine him properly. Defendant conversely contends that the ALJ had no reason to seek Dr. Fulford's report, as Plaintiff did not indicate any information regarding the report that "could have reasonably led the ALJ to know that there was an outstanding report from Dr. Fulford." D's Br. at 7-8. Defendant further asserts that because the Appeals Council considered Dr. Fulford's report, there was no prejudice to Plaintiff.

A. Failure to Inquire into Plaintiff's Learning Disability

While Defendant argues that the Plaintiff's testimony as to Dr. Fulford's report was too vague to require the ALJ to inquire further, courts have held that despite vague testimony of the claimant, an ALJ with a heightened duty to develop the record should probe testimony that may be integral to the claimant's case. *See Gauthney v. Shalala*, 890 F. Supp. 401, 410 (E.D. Pa. 1995) (finding that an ALJ that failed to probe a claimant's vague testimony regarding his condition did not meet the heightened duty to *pro se* claimants); *Reefer v. Barnhart*, 326 F.2d 376, 380 (3d Cir. 2003) (finding that a claimant was prejudiced by a lack of counsel where the ALJ did not follow up on medical testimony or complaints made by claimant in medical evidence). Thus, even with only Plaintiff's vague assertions, the ALJ in this case may have had a heightened duty to develop the record.

As it happens, however, Plaintiff did make several, fairly overt references to her mental condition. At the SSA hearing, Plaintiff testified that she believed she had a learning disability, for which a psychiatrist recently examined her. *See* A.R., 40, 42.  She mentioned the potential disability twice at the hearing, first when the ALJ reviewed the exhibits, stating that "I also have a learning disability, but I have no documents yet because . . ." This court cannot determine what else about her condition or the reasons for not producing more evidence Plaintiff might have provided, because the transcript indicates she was interrupted by the ALJ before she finished speaking, so that the ALJ could have Plaintiff sworn. A.R. 40. She again mentioned the learning disability, after having been sworn, when the ALJ reviewed her psychiatric history. At that time the Plaintiff stated:

> I just --- this is what I wanted to say, I'm going to take a test for my learning disability --- DVR, but they said it would be a would be a process, so that's why I didn't have nothing in writing for your today, because I do believe I have a learning disability.

9

A.R., 42. Following this response, the ALJ asked why the Plaintiff was getting evaluated, but did not follow-up after receiving no answer. Instead, the ALJ asked a series of questions about the Plaintiff's history of psychiatric treatment and medication use. A.R. 43. Plaintiff's learning disability and pending evaluation and report were never further explored.

In a similar case, *Gauthney*, the claimant briefly mentioned a deformity of his hand in his testimony and "the ALJ never probed further into the condition." *Gauthney*, 890 F. Supp. at 410. This failure to probe the evidence was found to have prejudiced the claimant and the case was remanded. As in *Gauthney*, the failure of the ALJ in this case to probe Plaintiff's testimony as to her learning disability likely prejudiced the proceedings. One of Plaintiff's claimed limitations was her suspected learning disability. She raised its existence to the best of her ability before the ALJ, including the existence of a scheduled evaluation, but the ALJ took no action to include the potential evidence of the disability which might be gleaned from the evaluation into the record.

Furthermore, Defendant's assertion, that because the Appeals Council considered the report there was no prejudice to the Plaintiff, is unsubstantiated by relevant law. Defendant cites no precedent supporting this proposition, and this Court has similarly identified none. Instead, this Court observes that if an appeal is rejected by the Appeals Council, the decision of the ALJ is considered the final decision of the Commissioner of Social Security. *See Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) ("A claimant who was unsuccessful in the administrative process may seek judicial review once there is a final decision by the Commissioner of Social Security. If the Appeals Council denies the request for review, the ALJ's decision is the Commissioner's final decision.") (internal citations removed); *see also Sims v. Apfel*, 530 U.S. 103, 106 (2000) ("But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision). In the present appeal, therefore, where this Court reviews the final

10

decision of the Commissioner, the only relevant evidence is that evidence actually sought by and presented before the ALJ. *Matthews*, 239 F.3d at 592. The ALJ's failure to inquire was prejudicial, despite the submission of the evidence in the attempt to secure an administrative appeal.

B. Failure to Adequately Question Vocational Expert

In addition to the failure to develop the record concerning Plaintiff's learning disability, another issue arises from the testimony of the Vocational Expert (VE). At the hearing, the ALJ questioned the expert and provided the Plaintiff the opportunity to cross-examine the VE.[2] In *Dobrowolsky*, the court expressed concern about the ability of *pro se* claimants to cross-examine vocational expert testimony and noted that "ALJs must question experts more thoroughly because claimants tend, as was true of *Dobrowolsky*, not to ask any questions of the vocational experts despite the variety of areas in which their testimony might be weak." *Dobrowolsky*, 606 F.2d 403, 408 n.14 (citing J. Mashaw et al., Social Security Hearings and Appeals 77-78 (1977)). Thus, in *Dobrowolsky*, the court remanded proceedings for further consideration because the ALJ failed to develop the record in both an evidentiary manner (by not inquiring into statements of the claimant) and because of the insufficiency of the examination of the VE. 606 F.2d at 407-08. Similarly, in the instant manner, Plaintiff did not question the vocational expert as to the reasoning behind his answers to the ALJ's hypotheticals. A.R., 61. Nor did the ALJ ask the VE

---

[2] The relevant colloquy went as follows:
> ALJ: Okay, do you have any questions for the vocational expert?
> CLMT: No
> ALJ: Okay, did you have anything else that you wanted to tell me about why you think you cannot work or what type of jobs you think you could do, or you could not do?
> CLMT: No
> ALJ: You're saying no. . . .

A.R., 61.

"to explain his conclusions in response to long hypothetical questions by the ALJ."

*Dobrowolsky*, 606 F.2d at 407-08. The ALJ asked the VE two hypothetical questions during his examination. In the first, the ALJ, in a question spanning a full page of the transcript and which was interrupted by a brief questioning of the Plaintiff, the ALJ asked the VE to opine whether there would be work available to a person with "the vocational profile of the claimant" who was "limited to light work," "can't work in extreme cold," "limited to work that can be learned in one month or less," "can't work in a noisy room," and "can't work in a job that requires reading." A.R., 58-59. The VE answered "Yes, your honor." A.R., 59. The ALJ followed-up by asking the VE to name some specific examples of such jobs and to identify how many of such jobs were available in the regional economy, but did not ask the VE to explain his conclusion that such work would be available to a person with the stated hypothetical limitations. The only inquiry that could be considered inquiry into the VE's reasoning was a brief exchange about how long it would take a person to learn a job in the category the VE identified. A.R., 60. In his second hypothetical, the ALJ asked the VE to consider an individual identical to that described in the first hypothetical, but with additional limitations of fatigue and depression, such that "she can focus only 50 percent of an eight hour day." A.R., 60-61. In response, the VE stated "With those limitations, your honor, it's my opinion the person would not be able to do any work." A.R., 61. The ALJ asked no follow-up questions after the VE's answer to the second hypothetical, and the VE did not independently volunteer any elaboration of his reasoning. *Ibid.*

As discussed *supra*, the purpose of imposing a heightened thoroughness requirement upon ALJs in the case of *pro se* claimants is to promote fairness in the evaluation of VE testimony in cases in which the claimant is unlikely to conduct any inquiry on her own behalf. By the time of the hearing, Plaintiff, proceeding *pro se*, had already alluded to and demonstrated

12

that she had a potential learning disability and had a low-level IQ preventing her from cross-examining the VE, and even from truly comprehending the VE's testimony. In fact, Plaintiff asked no questions of the VE whatsoever. The ALJ, therefore, had a heightened duty to thoroughly examine the VE. As described above, this Court finds that the ALJ's questioning of the VE in this case did not meet the heightened standard.  Accordingly, from the record before it, and in light of the guidance from the Third Circuit, this Court can only conclude that the aforementioned infirmities rendered Plaintiff's hearing unfair.

CONCLUSION

For the foregoing reasons, this Court finds that it would be appropriate to remand this matter for rehearing because (i) the ALJ failed to obtain a knowing and voluntary waiver of the right to counsel due to Plaintiff's low level of intelligence, and (ii) the ALJ did not meet his heightened duty owed to a *pro se* claimant to develop the record, resulting in prejudice to the Plaintiff at her Social Security hearing. This matter is remanded to the Social Security Administration.

An appropriate Order shall follow.

Dated:  ____8/13/2014_____                                  _____/s/ Freda L. Wolfson __
                                                                            The Honorable Freda L. Wolfson
                                                                            United States District Judge